IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. ARAGON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LUIS O. ARAGON, APPELLANT.

Filed April 17, 2018.    No. A-17-516.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Travis Penn, of Penn Law Firm, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Luis O. Aragon was convicted in the district court for Sarpy County of possession of 140 grams or more of cocaine with intent to deliver, two counts of delivery of a controlled substance, possession of a controlled substance, conspiracy to commit delivery of a controlled substance, and aiding the consummation of a felony. He was sentenced to an aggregate of 20 to 20 years in prison. On appeal, Aragon assigns that the district court erred in overruling his motion to dismiss the charge of possession of cocaine with intent to deliver due to insufficient evidence and in overruling his motion for a mistrial because the state introduced evidence that the parties had agreed was inadmissible. For the reasons set forth below, we affirm.

### BACKGROUND

On September 22, 2016, Aragon was charged by information with the following: count 1, possession of cocaine with intent to deliver, 140 grams or more, a Class IB Felony; counts 2 and

3, delivery of a controlled substance, Class II felonies; 4, possession of a controlled substance, a Class II felony; count 5, conspiracy to commit delivery of a controlled substance, a Class II felony; count 6, aiding the consummation of a felony, a Class VI felony.

At trial, the State presented testimony from four witnesses. Sergeant James Wrigley testified that in September and October of 2015, he was an investigator for the narcotics unit of the Sarpy County Sherriff's Office (unit). He explained that the unit, as a part of the Omaha Metro Area Drug Task Force, shares resources with other metro area agencies. The unit uses confidential informants to identify drug dealers and gather evidence against them. Here, a confidential informant identified Aragon as a drug dealer and, under the unit's supervision, he performed controlled buys on September 21 and 23 and October 14 and 15, 2015. In each controlled buy, the unit provided the confidential informant with money to purchase a small amount of cocaine from Aragon or Aragon's associates and gave him equipment to record the cocaine purchase.

After the controlled buys, the unit obtained a search warrant for Aragon's house and assigned a surveillance officer to monitor Aragon's movements. When the surveillance officer noticed Aragon leave his home, law enforcement officials followed him to a hardware store where they arrested him. Once they had transported Aragon back to his house, they escorted Aragon inside and asked him where the narcotics were. He told them that the cocaine was in the back right bedroom in the top right dresser drawer.

When the law enforcement officials looked in the dresser drawer, they found 171.66 grams of cocaine and 3.6 grams of methamphetamine. Additionally, they found a small black scale commonly used to measure narcotics. Wrigley testified that based on his training and experience, the amount of cocaine in Aragon's bedroom was consistent with the distribution of cocaine. He explained it was the most cocaine found in the metro area in 9 months and the largest seizure of cocaine he had ever seen.

The confidential informant testified at trial, generally confirming Wrigley's version of events. He explained that he uses cocaine every few months, which is how he came in contact with Aragon. Although he admitted the amount of cocaine a drug user would keep for personal use could vary, he felt a "heavy user" of cocaine would only consume a couple of grams of cocaine each day.

Areli Aragon, Aragon's cousin, and her then boyfriend, Joseph Moore, testified that they purchased cocaine from Aragon and sold it at a price he set. They lived off of a portion of the cocaine sales' profits. With the remaining money, they purchased more cocaine to sell. Areli understood this arrangement to be a continuing business relationship, and Moore did not know Aragon to have a job.

Mark Shiller testified that he is a narcotics investigator who worked with the unit and the Omaha Metro Drug Task Force for 11 years. At the time the unit arrested Aragon, Shiller worked as the unit's property officer, which required him to log property in evidence. He remembered seizing cocaine, methamphetamine, marijuana, and a scale from Aragon's house. In his opinion, the amount of cocaine found in Aragon's house was a "dealer amount," and he could not recall finding a larger amount of cocaine in Sarpy County on one incident.

Shiller identified three plastic bags taken from Aragon's house containing a total of 171.66 grams of cocaine, a plastic bag containing 3.6 grams of methamphetamine, and a scale. The court admitted all of the items into evidence. Additionally, he identified a plastic bag containing 13.98

grams of cocaine, which he identified as item 1 from the search warrant inventory on Aragon's house. The State offered the bag into evidence, and Aragon did not object. The court admitted the bag with 13.98 grams of cocaine into evidence as exhibit 22. Shiller also identified a lab report that verified the contents of each bag, including exhibit 22. The court received the lab report into evidence without objection. The court also admitted a document that Aragon's counsel signed, stipulating that the lab report describes the drugs seized in this case and that it accurately reflects the laboratory results and conclusions of analysis for each item listed.

After the State rested its case and the jury left the courtroom, the State disclosed that the parties had agreed not to offer exhibit 22 into evidence. The State mistakenly offered it through Shiller because the unit seized and tested it simultaneously with the cocaine it found in Aragon's house. The State also pointed out that the lab report the court admitted into evidence referred to the 13.98 grams of cocaine. But the State argued the court properly admitted the lab report because Aragon had notice that the State planned to offer it and stipulated to its foundation. Aragon moved for a mistrial due to the mistakenly offered evidence, which the court overruled. To correct the mistake, the State reopened the case, called Shiller to correct his testimony, and withdrew exhibit 22. The court admonished the jury with an instruction not to consider the withdrawn evidence.

The jury found Aragon guilty on all counts. The district court sentenced Aragon to a term of 20 to 20 years on count 1; terms of 4 to 6 years on counts 2, 3, and 5; and terms of 1 year on counts 4 and 6. The court ordered the terms for counts 2, 3, 4, 5, and 6 to be served consecutively and the terms for count 1 to be served concurrently with the other counts. Aragon appeals.

## ASSIGNMENTS OF ERROR

Aragon assigns, restated, that the district court erred in (1) overruling his motion to dismiss the charge of possession of cocaine with intent to deliver due to insufficient evidence and (2) overruling his motion for a mistrial based on the State introducing evidence that the parties had agreed was inadmissible.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017).

Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Huff*, 298 Neb. 522, 905 N.W.2d 59 (2017).

## ANALYSIS

*Sufficiency of Evidence.*

Aragon assigns the district court erred in overruling his motion to dismiss count 1, the possession with intent to deliver under Neb Rev. Stat. § 28-416(1) (Supp. 2015), for insufficient

evidence. He contends that although the record shows that he possessed more than 140 grams of cocaine, little evidence supports the conclusion that he intended to distribute the cocaine in his possession. We disagree.

Section 28-416 provides as follows:

(1) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance; or (b) to create, distribute, or possess with intent to distribute a counterfeit controlled substance.

Circumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *Id*. Further, evidence of the quantity of a controlled substance possessed combined with expert testimony that such quantity indicates an intent to deliver can be sufficient for a jury to infer an intent to deliver. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). See, also, *State v. Howard, supra*; *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996); *State v. Parsons*, 213 Neb. 349, 328 N.W.2d 795 (1983).

The State provided sufficient evidence for the jury to conclude beyond a reasonable doubt that Aragon possessed more than 140 grams of cocaine with the intent to distribute. The police found 171.66 grams of cocaine in Aragon's bedroom, packaged in three bags, along with a scale to measure out quantities of narcotics. Wrigley and Shiller testified that the amount of cocaine in Aragon's home was far greater than the amount a person would keep for personal use and was indicative of a dealer quantity. Wrigley testified it was the largest quantity law enforcement had found in the Omaha metropolitan area in 9 months, as well as the most he had ever seen. Shiller similarly could not recall ever finding a larger amount of cocaine in one incident. Further, Areli stated that she and Moore had a continuing business relationship with Aragon in which he directed them to sell cocaine at a set price, and Moore testified that, aside from selling cocaine, Aragon did not have a job.

The amount of the cocaine found, in conjunction with the testimony of law enforcement officials who regularly monitor drug activity and the witnesses' testimony about Aragon's trade in cocaine, was sufficient circumstantial evidence for a jury to infer Aragon intended to deliver the cocaine in his possession. See *State v. Draganescu, supra*. Viewing the evidence in a light most favorable to the State, we find a reasonable trier of fact could convict Aragon of possession of a controlled substance with intent to distribute beyond a reasonable doubt.

*Motion for Mistrial.*

Aragon also assigns the district court erred in overruling his motion for a mistrial relating to the State's mistaken offer of evidence of an additional 13.98 grams of cocaine that it represented was found in Aragon's house. Aragon did not object when the State offered exhibit 22. Failure to

make a timely objection waives the right to assert prejudicial error on appeal. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

Although Aragon failed to make a timely objection to the admission of the evidence, he did move for mistrial after the mistake was brought to his attention. A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). The defendant seeking a mistrial must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017). In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury, (2) whether the conduct or remarks were extensive or isolated, (3) whether defense counsel invited the remarks, (4) whether the court provided a curative instruction, and (5) the strength of the evidence supporting the convictions. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).

Aragon argues that the State's case against him rested largely on the amount of cocaine he possessed. He asserts that when the State mistakenly offered evidence that the police found more cocaine in his house than they actually did, it irreversibly inflated the jury's perception of the amount of cocaine he possessed and made it more likely that the jury would convict him on the distribution charge. We disagree.

The evidence the State mistakenly offered related to 13.98 grams of cocaine and testimony that the police found that cocaine in Aragon's house. After discovering that it mistakenly offered this exhibit, the State reopened the case, called Shiller to correct his testimony, and withdrew the mistakenly offered exhibit. Additionally, the court admonished the jury with an instruction not to consider the withdrawn evidence. As noted above, the properly admitted 171.66 grams of cocaine, along with the testimony that this was a dealer quantity and Aragon regularly sold cocaine, was sufficient to convict Aragon of possession with intent to deliver. The withdrawn evidence of an additional 13.98 grams of cocaine did not likely mislead the jury or make Aragon's trial unfair, the State's offer of the mistaken evidence was inadvertent and ultimately corrected, the trial court provided a curative instruction, and there was strong evidence supporting the conviction.

In summary, the mistakenly offered exhibit did not unfairly prejudice Aragon or make his trial unfair. From our review of the trial record, we conclude the district court did not abuse its discretion in overruling Aragon's motion for a mistrial.

## CONCLUSION

The district court did not err in overruling Aragon's motion to dismiss the charge of possession of cocaine with intent to deliver or in overruling Aragon's motion for a mistrial.

AFFIRMED.